Monique **DONALDSON, Ronald A. Douglas, Landruff E. Trent and Janice Harris, on behalf of themselves and all similarly situated persons, Plaintiffs,**

v.

**MICROSOFT CORP., Defendant.**

No. C00–1684P.

United States District Court,
W.D. Washington,
at Seattle.

Nov. 16, 2001.

---

Christine E. Webber, Deborah J. Vagins, Michael D. Hausfeld, Amanda L. Maisels, Cohen, Milstein, Hausfeld & Toll, Washington, DC, James M. Finberg, Kelly M. Dermody, Eve H. Cervantez, Joy A. Kruse, Lieff, Cabraser & Heimann, San Francisco, CA, Steven J. Toll, Julie Goldsmith, Cohen, Milstein, Hausfeld & Toll, PLLC, Seattle, WA, Cameron A. Stewart, Johnnie L. Cochran, Jr., J. Keith Givens, Cochran, Cherry, Givens & Smith, Los Angeles, CA, Carl A. Taylor Lopez, Lopez & Fantel, Seattle, WA, for plaintiffs.

Kirk A. Dublin, Ramona M. Emerson, Preston, Gates & Ellis, Seattle, WA, Barbara Berish Brown, Paul, Hastings, Janofsky & Walker, Washington, DC, Donna M. Mezias, Preston, Gates & Ellis, San Francisco, CA, Richard V. Falcon, Neal M. Janey, George C. Doub, Raymond M. Brown, William H. Murphy, III, William H. Murphy, Jr., James E. McCollum, Jr., William, Murphy & Associates, Baltimore, MD, Nancy L. Abell, Patricia M. Berry, Paul, Hastings, Janofsky & Walker, LLP, Los Angeles, CA, for defendant.

## ORDER ON PLAINTIFFS' MOTION FOR CLASS CERTIFICATION AND DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

PECHMAN, District Judge.

Pending before the Court are two related motions. Plaintiffs have brought a motion for class certification. Dkt. No. 108. Defendant has brought a motion for partial summary judgment. Dkt. No. 137.

Having reviewed all materials submitted by the parties, as well as the remainder of the Court's files, and having heard oral argument on October 19, 2001, the Court ORDERS as follows:

1. Plaintiffs' motion for class certification is DENIED.

2. Defendant's motion for partial summary judgment is GRANTED in part and DENIED in part.

### I. FACTS

Plaintiffs have filed suit on behalf of current and former female and African American employees of Microsoft in the United States. See Second Consolidated Amended Complain ("Compl.") ¶ 16. The proposed class includes all non-executive positions.[1] Plaintiffs' Memorandum in Support of Motion for Class Certification ("Pls.' Class Cert. Mem.") at 1. Plaintiffs bring allegations of disparate impact on the basis of race and gender in violation of § 703 of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2, disparate treatment on the basis of race and gender in violation of § 703

---

1. Specifically, plaintiffs seek to bring suit on behalf of all female and African American employees up to and including grade level 67. Microsoft classifies all positions on scale of 50–88. Declaration of Ross Popenoe Re: Compensation in Support of Defendant Microsoft Corporation's Opposition to Plaintiff's Motion for Class Certification ("Popenoe Decl.") Ex. H. At all times relevant to this litigation, positions at grade level 67 and below were non-executive positions. Pls. Class Cert. Mem. at 1.

of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2, and intentional discrimination against African American employees in violation of 42 U.S.C. § 1981. Compl. ¶¶ 76–89. Plaintiffs also bring an allegation of retaliation against both African American and female employees in violation of both § 704(a) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–3 and 42 U.S.C. § 1981. *Id.* ¶¶ 90–94.

Plaintiffs' allegations stem primarily from their dissatisfaction with defendant's "set of practices involving compensation and promotions." Pls.' Class Cert. Mem. at 1. Specifically, plaintiffs allege that "Microsoft uses an excessively subjective evaluation system." Compl. ¶ 10. While plaintiffs concede that "this broad subjectivity in employment practices is not itself discriminatory," plaintiffs argue that the undue subjectivity afforded to Microsoft's supervisors has enabled discrimination in the workplace. Pls.' Class Cert. Mem. at 1. Plaintiffs argue that female and African American employees at Microsoft were hired a disproportionately low salary level, were assigned to disproportionately low grade levels at initial hire, were inadequately promoted to higher grade levels during the course of their employment, and received disproportionately low raises, bonuses, and stock options. Comp ¶¶ 11, 12.

In support of their motion for class certification, plaintiffs rely on three categories of data. First, plaintiffs challenge the very structure of Microsoft's hiring, classification, promotion, and compensation system. Second, plaintiffs rely on anecdotal data to support their contention that Microsoft's employment practices have resulted in discrimination. Third, plaintiffs offer statistical data to support their claims of disparate treatment and disparate impact against women and African Americans. These three categories of data will be outlined one at a time. Finally, there are facts which are specific to defendant's motion for partial summary judgment. For purposes of clarity, these facts will be addressed separately.

## A. Microsoft's hiring, classification, promotion, and compensation system

Microsoft characterizes itself as a "meritocracy." Microsoft's Memorandum of Point and Authorities in Opposition to Plaintiffs' Motion for Class Certification ("Class Cert. Opp.") at 4. Upon entry into a position, employees are compensated based on relevant prior experience and (if applicable) previous performance-based merit raises. Popenoe Decl. ¶ 6.

All employees are reviewed twice per year. Declaration of Denise White in Support of Defendant Microsoft Corporation's Opposition to Motion for Class Certification ("White Decl.") Ex. A. At each review, every employee is assigned a score of 1.0–5.0. *Id.* Microsoft uses a strict "curve" in rating employees. *Id.* 25% of employees in a work group will be assigned a score of 3.0 or below; 40% of employees in any work group will be assigned a score of 3.5; 35% of employees in any work group will be assigned a score at or above 4.0. *Id.* Managers must rate employees against previously-identified job goals and objectives. In addition, the employee is rated in comparison to other employees doing comparable work in the same work group. *Id.*

An employee's evaluation score will directly impact the size of that employee's annual bonus, annual stock options award, annual salary adjustment, and promotional opportunities. Popenoe Decl. Ex. F. However, an employee's rating is not the sole factor which determines the scope of that employee's promotion and compensation. Promotions are based on other factors as well, such as the needs of the corporation. White Decl. Ex. A. In addition, bonuses may be distributed for a job well done during a limited time period, such as excessive hours worked in preparation for a product launch. *Id.* Finally, Microsoft encourages its managers to use stock awards to retain those employees perceived to have the most potential long-term benefit to the company. *Id.;* Popenoe Decl. Ex. I.

## B. Anecdotal evidence

Plaintiffs have submitted declarations from the three named class representatives, as well as from seventeen additional potential

class members.[2] Dkt. Nos. 112–131. These declarations detail the variety of experiences that one might expect from any cross-sampling of employees at a major corporation. Many of the declarants describe both, successes and failures, promotions and demotions during their tenure at Microsoft. *See, e.g.*, Declaration of Monique Donaldson and Ronald Douglass. Dkt. Nos. 112, 113. Several declarants describe incidents which appear to be motivated by race or gender-based animus. *See, e.g.* Declarations of Carolyn Codwell and Endre Glenn. Dkt. Nos. 117, 121. However, for the most part, those declarants who experienced setbacks or difficulties while at Microsoft can only speculate that their experiences were the result of racism or sexism.

## C. Statistical data.

In support of their motion for class certification, plaintiffs rely on the Corrected Declaration of Charles R. Mann, Ph.D.[3] ("Mann Decl."). Dr. Mann alleges that his statistical analysis reveals statistically significant adverse effects in the Microsoft workplace experienced by women and African Americans. *See*, generally, Mann Decl. ¶¶ 13–16. Dr. Mann failed to include in his declaration his own data which revealed concurrent statistical significant advantages to women and African Americans. *See*, generally, Mann Dep. (at Abell Decl. Ex N); Amended Declaration of Joan Gustafson Haworth, Ph.D. in Support of Defendant Microsoft Corporation's Opposition to Plaintiffs' Motion for Class Certification ("Haworth Decl."). Overall, the data suggesting that women and African Americans received greater benefits than their white male counterparts cancelled out, almost exactly, the data suggesting negative effects in the workplace for women and African Americans. Class Cert. Opp. at 12.

In his analysis, Dr. Mann included data on employees in levels 68 through 86, despite the fact that plaintiffs do not seek to include these employment levels in their class. Haworth Decl. ¶ 18. Finally, Dr. Mann also included, in arbitrarily created "job groups," employees, with a wide range of salary levels. Dr. Mann then compared the benefits afforded to various members of those groups. Haworth Decl. ¶¶ 15–27. These comparisons were done despite the fact that members of these artificially created job groups would be expected to earn a wide range of salaries.

In response to the criticism of his analysis leveled by defendant, Dr. Mann produced a new set of statistics in support of plaintiffs' reply memorandum. Rebuttal Declaration of Charles R. Mann, Ph.D. ("Mann Rebuttal Decl."). These statistics were produced by using the same raw data used in the creation of Dr. Mann's original declaration. *See*, generally, Mann Rebuttal Decl. These statistics, too, are suspect. For example, Dr. Mann continued to compare employees in different positions and earning different salaries. Declaration of Joan Gustafson Haworth, Ph.D. in Reponse to Rebuttal Declaration of Charles R. Mann, Ph.D. and in Support of Defendant Microsoft Corporation's Opposition to Plaintiffs' Motion for Class Certification ("Haworth Response Decl.") ¶¶ 11–13. Dr. Mann also imprecisely compared junior-level female and African American employees to more senior male and caucasian employees by utilizing arbitrary and imprecise seniority rankings. Haworth Response Decl. ¶¶ 3–7. Finally, a significant portion of Dr. Mann's findings rest on comparisons of a single female and/or African American employee against the average of numerous caucasian and/or male employees. Haworth Response Decl. ¶¶ 8–10.

## D. Class representative Donaldson's EEOC Complaint

Defendant's motion for partial summary judgment raises the question of when, and to

---

**2.** Defendant has moved to strike portions of the declarations submitted by plaintiffs in support of their motion for class certification, and has also moved to strike portions the declarations submitted by plaintiffs in opposition to defendant's motion for partial summary judgment. The Court has ruled on these motions to strike by separate Order. *See* Order on Motions to Strike Related to Plaintiffs' Motion for Class Certification and Related to Defendant's Motion for Partial Summary Judgment ("Order on Mot. Strike").

**3.** Defendant has also brought a motion to strike portions of the Corrected Declaration Dr. Mann. *See* Order on Mot. to Strike.

what extent, plaintiff Donaldson made claims of discrimination to the Equal Employment Opportunity Commission ("EEOC"). Because the timing and order of Ms. Donaldson's contacts with the EEOC are crucial to an analysis of defendant's motion for partial summary judgment, these facts are presented below in the form of a time line:

- On December 2, 1999, Monique Donaldson went to EEOC and filled out an "intake questionnaire." Declaration of Nancy Abell in Support of Defendant Microsoft Corporation's Motion for Partial Summary Judgment ("Abell S.J. Decl.") Ex. C. Ms. Donaldson checked boxes indicating discrimination on the basis of "race" and "religion." She left blank the box which would indicate discrimination on the basis "sex." *Id.* Ms. Donaldson left blank the areas of the form which invited her to comment on the existence of "others who were treated the same as you were under the same or similar working conditions." *Id.* Specifically, Ms. Donaldson requested the following remedies: (1) An increased rating for her most recent performance evaluation; (2) A salary increase and bonus commensurate with the rating she felt she deserved.; and (3) "Pay adjustment according to the Comp2000 increases." *Id.*

- On December 20, 1999, Ms. Donaldson signed a discrimination charge. Declaration of Monique Donaldson in Opposition to Defendant's Motion for Partial Summary Judgment ("Donaldson S.J. Decl.") Ex. C. Ms. Donaldson alleged that her 2.5 rating during her most recent job performance review was unfair, and that she "believed" that her evaluation was based on race and sex. *Id.*

- On December 20, 1999 (the same day that she signed the charging document), Ms. Donaldson signed an affidavit which was drafted by EEOC employee Kathryn Wilson Donaldson S.J. Decl. ¶ 2; Ex. B. The affidavit mentions the bell curve rating system at Microsoft in the context of explaining the meaning of the 3.0 and subsequent 2.5 ratings that Donaldson received at Microsoft. There is no specific allegation that the bell curve is per se discriminatory.

Donaldson S.J. Decl. Ex. B. The affidavit also contains the hearsay statements that "she (diversity manager at Microsoft) ruled that had been subjected to discrimination on the basis of race," and "she was completely frustrated because I was the fourth or fifth woman to file a Complaint with her over this round of Comp2000 evaluations." *Id.*

- On January 27, 2000, Ms. Donaldson faxed a letter to the EEOC alleging, in relevant part, that "myself and other female and African American employees of Microsoft have been harmed by a continuing pattern and practice or policy of discrimination."[4] Donaldson S.J. Decl. ¶ 4; Ex. D. She further stated that she and other potential class members "have been treated differently than other similarly situated males and non-African American employees with regard to compensation and other terms and conditions of employment." Donaldson S.J. Decl. Ex. D.

- On January 27, 2000, the EEOC wrote back to Ms. Donaldson and acknowledged receipt of her letter. Declaration of Joseph Denney in Support of Defendant Microsoft Corporation's Motion for Partial Summary Judgment ("Denney S.J. Decl.") Ex. B. The EEOC requested more information, specifically the "names of the other African American females and the names of comparitors (sic) who are male and non African American (sic), the specific 'terms and conditions' which you observed or have personal knowledge of being different for these groups." *Id.* Ms. Donaldson was also advised in writing that "[t]he EEOC generally considers the merits of your individual claim before pursuing alleged class violations. If the others you state were treated less favorably wish to file individual claims, that is the best method for each to preserve his/her individual rights including that to litigate in Federal court and secure relief." *Id.*

- Ms. Donaldson recalls that she spoke with EEOC counselor Wilson "numerous times between December of 1999 and June of 2000." Donaldson S.J. Decl. ¶ 7. Ms. Don-

4. The letter was dated January 26, 2000.

aldson further recalls that "in a telephone conversation, we discussed facts supporting my belief that Microsoft discriminated against female and African American employees." *Id.* Ms. Donaldson recalls that she orally informed the EEOC of "four women who had Complaints of race and gender discrimination," and that she also identified "an African American male." *Id.* The provision of this information is confirmed by a review of the EEOC file. It appears from the file that although the EEOC interviewed Ms. Donaldson's supervisors, they only interviewed one of the potential class members. Denney S.J. Decl. Ex. C.

- On May 5, 2000, Ms. Donaldson wrote again to the EEOC. Donaldson S.J. Decl. Ex. E. The letter did not provide the names, contact information, or specific experiences of any colleagues. *Id.* Instead, Ms. Donaldson chronicled, in considerable detail, the troubles that she had experienced in getting assigned a window office while employed at Microsoft. *Id.* This was a perk to which she was apparently entitled in view of her seniority. *Id.*

- Microsoft was never apprized of Ms. Donaldson's letters. Malcom S.J. Decl. ¶ 3; Exh. A. It was only compelled to respond to the original charging document, which raised issues of disparate treatment apparently specific to Donaldson. *Id.*

## II. ANALYSIS OF MOTION FOR CLASS CERTIFICATION

■ A class may only be certified if plaintiffs meet certain threshold requirements. These are: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a). Plaintiff must submit "significant proof" of a class-wide pattern or practice of discrimination. *Gen. Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 159 n. 15, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). If and when plaintiffs meet each of these

threshold requirements, plaintiffs must then establish the existence of at least one of three bases for a class action. Fed.R.Civ.P. 23(b). The Court need not, and in fact may not, consider the question of Rule 23(b) compliance unless and until it is established the plaintiffs have met each of the predicate factors under rule 23(a). *Doninger v. Pacific Northwest Bell, Inc.,* 564 F.2d 1304, 1313 (9th Cir.1977).

### A. Numerosity

■ There are 7,200 potential class members. Declaration of Deborah Vagins in Support of Plaintiffs' Motion for Class Certification ("Vagins Decl.") Ex. 2. In light of this information, defendant has conceded that the numerosity requirement is satisfied. Class CEA Opp. at 6.

### B. Commonality

■ A class action may not be certified unless the case presents "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). Not all questions of law or fact raised in the litigation must be identical. Instead, at least one issue must be common to the claims of all class members. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir.1998). The mere allegation of individualized discrimination on the basis of race, coupled with proof that other people of color work in the same environment, is insufficient to establish commonality. The United States Supreme Court has commented on the significant gap between proof of discrimination on an individual basis and establishing the existence of a class of similarly-situated litigants:

[T]he allegation that ... discrimination has occurred neither demonstrates whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common

questions of law or fact and that the individual's claim will be typical of the class claims.

*Falcon,* 457 U.S. at 157, 102 S.Ct. 2364.

■ With the requirement of commonality in mind, the Court turns to the evidence submitted by plaintiffs in support of their motion for class certification. Although a motion for class certification is decidedly not a time for adjudication of the merits of plaintiffs' claim, the Court may "probe behind the pleadings before coming to rest on the certification question." *Id.* at 160, 102 S.Ct. 2364. Having reviewed the information regarding Microsoft's management policies, the anecdotal data supplied by plaintiffs, and the statistical data provided by both parties, the Court concludes that the commonality requirement has not been established.

Specifically, the Court concludes that Microsoft's managerial system is not inherently flawed, and moreover concludes that the statistical data belies the existence of any class-wide pattern of discrimination. Finally, even if plaintiffs could establish a common pattern of discrimination, their purported class includes such a wide range of employees, subject to such a wide range of criteria for performance evaluations, that any commonality which might have existed amongst a narrower class of persons is defeated. The Court will address these flaws in plaintiffs' case one at a time.

*1. Microsoft's benefits system is not inherently flawed.*

■ Plaintiffs' allegations of discrimination arise mainly from Microsoft's system for employee compensation and promotion. Plaintiffs' theory, which alleges both intentional and as-applied discrimination, is somewhat convoluted. Plaintiffs acknowledge, and even critique, Microsoft's centralized set of benefits policies. However, plaintiffs complain that these seemingly standardized systems of review and compensation are undermined by unfettered discretion vested in Microsoft's management.

■ Plaintiffs concede that broad managerial discretion in employment practices is not itself discriminatory. Pls.' Class Cert. Mem. at 1; *see also Coleman v. Quaker Oats Co.,*

232 F.3d 1271, 1285 (9th Cir.2000). To challenge the subjectivity built into Microsoft's benefit system, plaintiffs would have to establish a link between Microsoft's practices and some measurable impact on women and African American employees as a class. As will be discussed in more detail below, the statistics produced by plaintiffs' expert fail to establish such a link.

Before proceeding to a review of the statistical data in this matter, it is worth noting that Microsoft's benefits system appears, on its surface at least, to be a well-crafted combination of both objective and subjective measures. Employees are hired and slotted in a salary ladder. Each step on the ladder is accompanied by detailed prerequisite employee attributes. Microsoft evaluates its employees twice a year. The bi-annual evaluations are conducted on a bell curve, with personnel in similar jobs competing against one another for "grades." However, the subjectivity inherent in such a review process is tempered by a requirement that employee goals and objectives be mapped out well in advance, in order to allow the employee the opportunity to meet articulated job expectations. Any employee who is unsatisfied with his or her rating may appeal the rating. There is a specialized division of Microsoft's Human Resources division delegated to address concerns about diversity. Thus, absent some indication that Microsoft's benefits system is breaking down as applied to a class of persons, there is nothing apparent in the system's design to suggest its lack of functionality.

*2. Plaintiffs' statistics belie the existence of any class-wide discrimination against female and/or African American employees*

At the outset, the Court notes that the credibility of plaintiffs' statistician is somewhat suspect. For example, plaintiffs' expert included in his declaration submitted to the Court only data suggestive of discrimination, and excluded from his declaration all data which established that female and/or African American employees received benefits *above and beyond* those of their white male counterparts. Moreover, plaintiffs' expert compared the salary data on jobs which bore similar titles, but which required greatly

varying skills and which Microsoft openly acknowledges afforded greatly varied compensation.

■ The Court need not overly concern itself, however, with these apparent flaws in methodology. The burden is on plaintiffs to establish a class-wide pattern of discrimination and plaintiffs' own statistics belie the existence of such a pattern. Plaintiffs' data reveals the following *lack* of discrepancy in the compensation, promotion, and evaluations of purported class members:

- Performance evaluations: No pattern of disparity for African Americans or women.

- Promotions: No findings "of particular interest."

- Compensation: No impact against African Americans in salary or bonus. While sex effects adverse to women were noted, there were an almost identical number of women who benefitted above and beyond their peers.

- COMP2000:[5] No adverse impact on African Americans. Adverse effects for women were found in 5 of 24 job categories.

- Initial placement and stack ranking:[6] No analysis done by plaintiffs regarding race and gender as variables in initial placement or stack ranking.

In their reply materials, plaintiffs presented the Court with an entirely new set of statistics. These numbers were created from the same raw data relied upon initially by plaintiffs. The sole difference appears to be that plaintiffs' expert employed different calculations. The results are notably different, but no more credible. *See* Section I(C), above.

*3. Even assuming the existence of some common claims, plaintiffs' proposed class is unworkably diverse*

■ Plaintiffs seek to certify a class including women and African American employees located throughout the country, en-gaged in jobs across an enormous variety of departments within Microsoft, and bearing a wide range of job responsibilities. Some of the purported class members are relatively low-level employees, while others are non-executive managers Even assuming credible evidence of common claims of discrimination among some number of Microsoft employees, the scope of this class would still be unworkable.

Courts have recognized that is not possible to make a finding of commonality where putative class involves extensive diversity in terms of geography, job requirements, and/or managerial responsibilities. *See, e.g., Reid v. Lockheed Martin Aeronautics Co., et al.,* 2001 WL 949960 *11–12, 2001 U.S. Dist. LEXIS 11685 *38–39; *Zachery v. Texaco Exploration and Production,* 185 F.R.D. 230, 239–40 (W.D.Texas 1999). Certainly, a diverse class does not automatically defeat commonality. For example, if each class member were subject to identical benefits criteria then variations in location or job description would be of minimal relevance. However, there are purported class members in sales who are evaluated on their sales performance, and there are purported class members in the Research group who are reviewed on academic "publish or perish" standards. Although each of these employees is graded on the Microsoft "curve, they are not graded on criteria which are standard across the board." Moreover, there are employees with the same job "title" who have different responsibilities from their counterparts in different work groups, and thus are entitled to different benefits. Absent some evidence that Microsoft's benefits system effected these various employees in the same or similar ways, the enormous diversity of this purported class defeats a finding of commonality.

## C. Typicality

The "commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon*

---

5. During COMP2000, each of Microsoft's job classification levels was expanded to two or three separate levels. For example, a former level 10 position became either a level 58 or level 59 position. Employees were then placed in one of the newly created job levels. Managers were afforded some amount of discretion in this placement process.

6. Stack ranking is the process by which employees with similar or identical jobs are ranked against one another during bi-annual reviews.

457 U.S. at 157 n. 13, 102 S.Ct. 2364. In this matter, where there is no evidence of a common experience shared by all female and African American employees at Microsoft, there can also be no "typical" class representative. In fact, the named plaintiffs each describe both successes and failures at Microsoft. They recount positive and negative evaluations, good and poor managers, fair and unfair treatment. While the Court recognizes that there may well be a basis for any number of individual discrimination claims against Microsoft, plaintiffs have failed to establish that any named plaintiff's experience was typical or representative of that of any other member of the purported class.

### D. Adequacy of representation

In evaluating compliance with Fed. R.Civ.P. 23(a)(4), the Court applies a two part test. First, the Court examines whether the class representatives are "able to prosecute the action vigorously through qualified counsel." *Smith v. University of Washington Law School*, 2 F.Supp.2d 1324, 1343 (W.D.Wash.1998) (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.1978)). Second, the Court evaluates whether the class representatives "have antagonistic or conflicting interests with members of the class." *Id.*

In this matter, the first portion of this test is satisfied. Defendant does not contest the adequacy of legal counsel for plaintiffs, nor is the Court aware of any reason why they should. However, the Court has serious concerns about potential conflicts of interest between the class representatives and members of the putative class.

Two of the three named plaintiffs (Ronald Douglas and Landruff Trent) are former Microsoft supervisors. As such, they were obligated to implement the very supervisory system which this litigation challenges. A conflict of interest may arise where a class contains both supervisory and non-supervisory employees. *See, e.g., Appleton v. Deloitte and Touche*, 168 F.R.D. 221, 233 (M.D.Tenn.

1996); *Wagner v. Taylor*, 836 F.2d 578, 579 (D.C.Cir.1987).

Not only are the named plaintiffs' interests in potential conflict with those of the putative class, but class members are also potentially in conflict with one another. There are a significant number of potential class members who are current or former managers. In February of 2001, there were more than 1,100 first-level female managers performing reviews who reviewed at least one woman. Declaration of Tara Eaves in Support of Defendant Microsoft Corporation's Opposition to Motion for Class Certification ("Eaves Decl.") ¶ 2. This was almost half of all first-level managers company-wide. *Id.* Moreover, there were approximately 24 African American managers during that same period who were called upon to evaluate African American employees. *Id.* Since plaintiffs allegations about disparate treatment and disparate impact arise directly from the evaluation system at Microsoft, the Court is unable to envision a class which would include both those who implemented the ratings system and those who allegedly suffered under it. This conflict appears insurmountable.

### E. Conclusion

Plaintiffs' anecdotal data chronicles the lives of numerous Microsoft employees who appear to have only one thing in common: they enjoyed both successes and failures while employed by defendant. The named plaintiffs and numerous putative class members propose that their difficulties while at Microsoft were the result of race or gender discrimination. This may in fact be true, and the Court cannot and will not adjudicate the substance of these claims at this stage of the litigation. However, to the extent that plaintiffs' allegations stem from inadmissible speculation or conclusion, the Court has stricken and must ignore the submissions.[7] This leaves untenably thin evidence upon which plaintiffs seek to proceed.

The ratings system at Microsoft, which plaintiffs vigorously oppose, is not faulty per se, although the Court recognizes that any corporate structure may operate—intentionally or otherwise—to the detriment of a pro-

7. *See* Order on Mot. to Strike.

tected class. Plaintiffs attempt to bolster their claims regarding Microsoft's ratings system with statistical data. Here, too, plaintiffs' evidence falls short of the mark. After careful review, the Court sees no pattern of discrimination contain in plaintiffs' statistical data which would suggest the existence of class-wide claims. Absent such a showing, the Court cannot find that plaintiffs' allegations will be most efficiently resolved by utilizing the mechanism of class litigation. Although plaintiffs have established that there are numerous Microsoft employees who are either female, African American, or both, plaintiffs have not carried their burden to establish that these people share claims that are common, that the named plaintiffs' claims are typical of those of the class, or that the named plaintiffs are adequate representatives of those who may have bona fide claims of discrimination against Microsoft. For all of these reasons, plaintiffs' motion for class certification is DENIED. Having concluded that plaintiffs have failed to meet their burden of proof with respect to Fed. R.Civ.P. 23(a), the Court will not proceed to analyze whether this case meets the requirements for class certification under Fed. R.Civ.P. 23(b).

## III. ANALYSIS OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant's motion for partial summary judgment goes to the scope of the putative class. Having determined that no class will be certified, the Court is not required to address the summary judgment issue. However, in light of the fact that Ms. Donaldson may elect to pursue individual claims against Microsoft, and in light of the magnitude of this litigation, the Court finds that both parties are entitled to know the Court's reasoning and conclusions as they relate to this motion.

Defendant seeks the following relief:

1. Partial summary judgment and dismissal of all gender discrimination class claims because the sole female class representative (Ms. Donaldson) failed to file a class-based gender discrimination charge with the EEOC.

2. Partial summary judgment and dismissal of all race discrimination class claims predating April 21, 2000 [8] because Ms. Donaldson's EEOC charge failed to allege class-based discrimination on the basis of race.

3. Partial summary judgment and dismissal of all individual and class-based adverse impact claims predating April 21, 2000, because Ms. Donaldson's EEOC charge failed to allege adverse impact discrimination of any type.

### A. The exhaustion requirement

A complainant must exhaust his or her administrative remedies and receive a right to sue letter before bringing a Title VII action court. *Paige v. State of California,* 102 F.3d 1035, 1041 (9th Cir.1996). The exhaustion requirement applies to individual litigants and to putative class representatives. *Naton v. Bank of California,* 649 F.2d 691, 697 (9th Cir.1981). A claim is exhausted if it "fell within the scope of the EEOC's *actual* investigation an EEOC investigation which *[could] reasonably be expected* to grow out of the charge of discrimination." *Paige,* 102 F.3d at 1041 (quoting *EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir.1994)) (emphasis in original, additional citation and internal quotation marks omitted)

### 1. The original charge and affidavit

Ms. Donaldson's initial charge did not allege disparate impact liability, nor any theory of class-wide discrimination. Her claim of discrimination in the original charge is simply this: "I believe that his (supervisor's) negative evaluation was based on my race, Black, and on my sex, female, in violation of

---

**8.** Defendant concedes that Plaintiff Douglass filed an EEOC charge on February 14, 2000 alleging class-wide disparate treatment and disparate impact on the basis of race. Plaintiffs are thus entitled to proceed to the extent that those claims arose on or after April 21, 2000, which is

300 days before Mr. Douglass filed his EEOC charges. Defendant Microsoft Corporation's Memorandum of Points and Authorities in Suppl. of Motion for Partial Summary Judgment ("Defendant's S.J. Mem.") at 3; Abell S. Decl. ¶ 8.

Title VII of the Civil Rights Act of 1964, as amended." Donaldson S.J. Decl. Ex. C. Thus, her original charge brings an individual disparate treatment claim.

Plaintiffs argue that Ms. Donaldson's simultaneously-filed affidavit provided notice her intent to raise a disparate impact claim by mentioning the existence of a bell curve rating system. This is unconvincing. Taken in context, Ms. Donaldson's explanation of the bell curve system is clearly designed to educate the reader about what it means to receive a "2.5" rather than a "3.0" score. There is no explicit statement, and no inference, that Ms. Donaldson is challenging the impact of Microsoft's rating system based on race. She is simply unhappy about the way in which she was personally treated in the allotment of rating scores.

Ms. Donaldson's affidavit *arguably* provided notice of her intent to pursue a class claim. She indicates that she was told, by a diversity manager, that several other women have complained about the Comp2000 review process. As explained in more detail below, the Court finds that this affidavit, in combination with subsequent communications between Ms. Donaldson and the EEOC, were sufficient to raise class-based theories of liability.

The Court concludes that the two subsequent letters written by Ms. Donaldson, and the alleged subsequent conversations between Ms. Donaldson and her EEOC counselor, were sufficient to introduce theories of class liability, but insufficient to raise add a theory of disparate impact liability to her underlying charge.

*2. The permissible scope of a subsequent amendment to an EEOC charge*

 Title VII imposes stricter requirements for the filing of charges than do the relevant EEOC regulations. According to statute, a charge must "be in writing

under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e–5(b). The EEOC regulations, however, indicate that a filed claim constitutes a "charge" when it consists of a "written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.02(b). The EEOC regulations also allow for amendment of charges "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein." Such amendments ... will relate back to the date the charge was first received. *Id.* "[T]he Equal Employment Opportunity Act is a remedial statue to be liberally construed in favor of the victims of discrimination." *Casavantes v. California State Univ. Sacramento,* 732 F.2d 1441, 1442 (9th Cir.1984) (quoting *Mahroom v. Hook,* 563 F.2d 1369, 1375 (9th Cir.1977)). "A liberal construction is particularly appropriate in situations which the complainant is acting *pro se.*" [9] *Id.*

In the *Casavantes* case, the filing of an unsworn Intake Questionnaire within the statute of limitations period was considered to be sufficient compliance with the EEOC regulations. *Id.* at 1443. Any deficiencies were cured by the subsequent filing of a sworn charging document, even though that sworn document was filed after the statute of limitations would have otherwise run. *Id.* Although *Casavantes* is not directly on point factually, the case does provide a strong indication of the Ninth Circuit's adoption of a "not technical" interpretation "of the procedural requirements inherent in the processing of discrimination claims." *Id.* at 1442 (citations omitted).

**B. Class-based allegations of disparate treatment**

 In light of the liberal reading afforded to EEOC Complaints in the Ninth

---

9. *The parties are in dispute over the extent to which Ms. Donaldson was acting pro se when she wrote a letter requesting the inclusion of class-based claims. At the very least the letter was written after consultation with counsel. However, since Ms. Donaldson indicates that she wrote the letter to the EEOC and that no attorney reviewed the letter before it was mailed, the* Court will view Ms. Donaldson as a pro se litigant for purpose of this motion. The Court is required to construe the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Circuit, Ms. Donaldson's class-based theory of disparate treatment must stand. Although Ms. Donaldson did not raise any theory of class-based liability in her initial EEOC charge, the Court may consider her subsequent addition of such a theory if "the new claims are like or reasonably related to the allegations contained in the EEOC charge." *Sosa v. Hiraoka*, 920 F.2d 1451, 1456 (9th Cir.1990). In determining whether claims are "reasonably related," the Court evaluates "the scope of an EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 1456.

Ms. Donaldson did not put all of her claims on her signed, verified charge form. However, through a series of affidavits, letters, and conversations, it is clear that she put the EEOC on notice that she was concerned about class-wide pattern and practice discrimination as it related both to women and to African American employees of Microsoft. Defendant's motion for partial summary judgment for failure to exhaust class based allegations of disparate treatment on the basis of race and/or gender is DENIED.

**C. Disparate impact**

 The issue of whether Ms. Donaldson properly exhausted her class-based disparate impact claims is more difficult. Plaintiffs argue that Ms. Donaldson raised the issue in her original charge and supporting affidavit, where she mentioned the existence of Microsoft's bell-curve system. This is a wholly unconvincing argument, as there was nothing in the original EEOC documents to suggest that Ms. Donaldson was pointing to the rating system a source of disparate impact.

The Ninth Circuit has allowed a disparate impact claim to proceed despite plaintiff's failure to explicitly raise an allegation of disparate impact during the course of his EEOC investigation. *Paige v. State of California*, 102 F.3d 1035 (9th Cir.1996). *Paige* is easily distinguished, however, from the case at hand. In *Paige*, plaintiff alleged in his administrative Complaint "that he was denied a promotion because of an alleged failure to achieve a high enough score on the promotional examination for State Traffic Captain, which examination was biased, discriminatory, non job-related, non-valid and not in conformance with all applicable federal and state laws, rules, and regulations ... in that the examination was conducted without consideration of an effective affirmative action program." *Id.* at 1041. In *Paige*, the plaintiff clearly described a disparate impact claim, although he did not use the words "disparate impact." In the case at hand, Ms. Donaldson did nothing to suggest that she was challenging the impact that Microsoft's bell curve might have on any class of persons.

The only other time that Ms. Donaldson even arguably notified the EEOC of her disparate impact theory was in her January 26, 2000 letter. *See* Donaldson S.J. Decl. Ex. D Close examination of this letter reveals, however, that Ms. Donaldson was specifically complaining that she was *treated* differently because of race and gender. She makes no allegations regarding any facially neutral system at Microsoft which was discriminatory as applied. Defendant's motion for partial summary judgment on the issue of failure to exhaust disparate impact claims is therefore GRANTED.

**D. Conclusion**

Defendant's motions to strike are DENIED in part and GRANTED in part. Defendant's motion for partial summary judgment is GRANTED in part and DENIED in part. Plaintiff Donaldson adequately notified the EEOC of her concerns regarding individual and class-wide disparate treatment discrimination. The EEOC was notified of these concerns as they related to women and African American employees at Microsoft. Plaintiff Donaldson did not notify the EEOC that she was pursuing a disparate impact claim, either on an individual or class-wide basis.

*IV. SUMMARY OF CONCLUSIONS*

For all of the reasons set forth more fully above, plaintiffs' motion for class certification (Dkt. No. 108) is DENIED, and defendant's motion for partial summary judgment (Dkt. No. 137) is GRANTED in part and DENIED in part.

After careful review, the Court concludes that plaintiffs have failed to establish the existence of a class of persons sharing any common claim of discrimination. Absent such a showing, the Court cannot find that class certification will promote the efficient and just resolution of plaintiffs' grievances. Plaintiffs' allegations against Microsoft appear to arise primarily from Microsoft's ratings system. This ratings system, however, is not faulty per se. In order to satisfy the Court that Microsoft's ratings system worked to the detriment of Microsoft's employees, plaintiffs would have to come forward with some evidence of either disparate treatment or disparate impact arising from the implementation of that system. Plaintiffs have failed to do either.

Plaintiffs' anecdotal data is thin at best. Plaintiffs' statistical data patently fails to establish the existence of a pattern of discrimination at Microsoft. Finally, the overbroad range of job responsibilities within plaintiffs' proposed class operates to undermine a finding of commonality of claims and also creates potential conflicts of interest among class members. For all of these reasons, plaintiffs have failed to meet the criteria for class certification set forth in Fed. R.Civ.P. 23(a).

As to defendant's motion for partial summary judgment, the Court concludes that Plaintiff Donaldson has adequately exhausted some of her claims. Ms. Donaldson notified the EEOC of her concerns regarding individual and class-wide disparate treatment discrimination at Microsoft. Ms. Donaldson's contacts with the EEOC were sufficient to place the EEOC on notice that she was raising these concerns as they related to both women and African American employees. Ms. Donaldson did not, however, notify the EEOC that she was pursuing a disparate impact claim, either on an individual or a class-wide basis. A result, Ms. Donaldson may not proceed with her claims of disparate impact discrimination.

The clerk of the Court is directed to distribute a copy of this Order to all counsel of record in this matter, and to all counsel of record and pro se parties in the matter of *Jackson et al. v. Microsoft Corp.*, C01–775P, and *Odom v. Microsoft Corp.*, C01–1632P.